# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of:<br>Information associated with accounts identified as "LYRAA.XO" and "XCXALYSSAXCX" that are within the possession, custody, or control of Instagram, Inc. | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.   2:18-MJ-00854 |

## APPLICATION FOR WARRANT PURSUANT TO 18 U.S.C. § 2703

I, a federal law enforcement officer, request a warrant pursuant to Title 18, United States Code, Section 2703, and state under penalty of perjury that I have reason to believe that within the following data:

*See Attachment A*

There are now concealed or contained the items described below:

*See Attachment B*

The basis for the search is:

☑ Evidence of a crime;
☑ Contraband, fruits of crime, or other items illegally possessed;
☐ Property designed for use, intended for use, or used in committing a crime.

The search is related to a violation of:

*Code section(s)*                    *Offense Description*

The application is based on these facts:

*See attached Affidavit, which is incorporated herein by reference.*

 

 

_____
*Applicant's signature*
Matthew Hutchison, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

City and State: _____

_____
*Judge's signature*
Rozella A. Oliver, U.S. Magistrate Judge
*Printed name and title*

AUSA: Scott M. Lara (x0427)

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with the accounts identified as "LYRAA.XO" an "XCXALYSSAXCX" (the "SUBJECT ACCOUNTS") that is within the possession, custody, or control of Instagram Inc., a company that accepts service of legal process at 1 Hacker Way, Menlo Park, California, regardless of where such information is stored, held, or maintained.

## ATTACHMENT B

## ITEMS TO BE SEIZED

### I.    SEARCH PROCEDURE

1.    The warrant will be presented to personnel of Instagram Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2.    To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3.    The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the law enforcement personnel specified below in Section IV.

4.    With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a. below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant.  The search shall extract and seize only the specific items to be seized under this warrant (see Section III below).  The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

i

5.   If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6.   The search team will complete its search of the content records as soon as is practicable but not to exceed 120 days from the date of receipt from the PROVIDER of the response to this warrant.  The government will not search the content records beyond this 120-day period without first obtaining an extension of time order from the Court.

7.   Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.  Thereafter, the search team will not access the data from the sealed original production which fell outside the scope of the items to be seized absent further order of the Court.

8.   The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

9.   Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

ii

## II.   INFORMATION TO BE DISCLOSED BY THE PROVIDER

10.   To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

a.   All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, limited to that which occurred on or after February 3, 2018,[4] including:

i.   All e-mails, communications, or messages of any kind associated with the SUBJECT ACCOUNT, including stored or preserved copies of messages sent to and from the account, deleted messages, and messages maintained in trash or any other folders or tags or labels, as well as all header information associated with each e-mail or message, and any related documents or attachments.

ii.   All records pertaining to communications between the PROVIDER and any person regarding a SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

---

[4] To the extent it is not reasonably feasible for the PROVIDER to restrict any categories of records based on this date restriction (for example, because a date filter is not available for such data), the PROVIDER shall disclose those records in its possession at the time the warrant is served upon it.

iii. All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

iv.  All communications or other messages sent or received by the account, including via Instagram Direct;

v.   All user content created, uploaded, or shared by the account, including any comments made by the account on photographs, videos, or other content;

vi.  All photographs, videos, images, comments, captions, and hashtags, as well as any metadata associated therewith, in the user gallery for the account;

vii. All location data associated with the account, or with photographs, videos, or other content, including geotags;

viii.    All records of Instagram searches performed by the account, including all past searches saved by the account; and

ix.  All information about connections between the account and third-party websites and applications.

b.   All other records and information, including:

i.   All subscriber information, including the date on which the account was created, the length of service, the IP address used to register the account, the subscriber's full name(s), screen name(s), any alternate names, other account names or e-mail addresses associated with the account, linked accounts, telephone numbers, physical addresses, and other identifying information regarding the subscriber, including any

removed or changed names, email addresses, telephone numbers or physical addresses, the types of service utilized, account status, account settings, login IP addresses associated with session dates and times, as well as means and source of payment, including detailed billing records, **and including any changes made to any subscriber information** or services, including specifically changes made to secondary e-mail accounts, phone numbers, passwords, identity or address information, or types of services used, and including the dates on which such changes occurred, for the following accounts:

(I) the SUBJECT ACCOUNT.

ii. All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.10.a., including all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

iii. A list of all of the people that the user follows on Instagram and all people who are following the user (i.e., the user's "following" list and "followers" list), as well as any "friends" of the user;

iv. A list of all users that the account has "unfollowed" or blocked;

v. All privacy and account settings, including past and present account status.

v

## III. <u>INFORMATION TO BE SEIZED BY THE GOVERNMENT</u>

11.   For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

a.   All information described above in Section II.10.a. that constitutes evidence, contraband, fruits, or instrumentalities of violations of Title 18 U.S.C. § 875(c) (Transmitting a Communication Containing a Threat to Kidnap or Injure), namely:

i.   Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts;

ii.   All search history and web history, including web clicks or "History Events," by the user of the SUBJECT ACCOUNT;

iii.   Records, communications, and information regarding threats to injure any individual;

iv.   Records, communications, and information regarding any plan to injure any individual;

v.   Records, communications, and information regarding any plan or effort to obtain a weapon or weapons;

vi.   Records, communications, and information regarding any school;

vii.   Records, communication, and information regarding any travel plans.

b.   All records and information described above in Section II.10.b.

## IV.  PROVIDER PROCEDURES

12.  IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant.  The PROVIDER shall send such information to:

> Special Agent Matthew James Hutchison
> Federal Bureau of Investigations
> 11000 Wilshire Boulevard, Suite 1700
> Los Angeles, California 90024
> 310-996-4337
> mjhutchison@fbi.gov

13.  IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

14.  IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant, until further order of the Court, until written notice is provided by the United States Attorney's Office that nondisclosure is no longer required, or until one year from the date the PROVIDER complies with this warrant or such later date as may be set by the Court upon application for an extension by the United States.  Upon expiration of this order, at least ten business days prior to disclosing the existence of the warrant, the PROVIDER shall notify the agent identified in paragraph 12 above of its intent to so notify.

## AFFIDAVIT

I, Matthew James Hutchison, being duly sworn, declare and state as follows:

### I.    INTRODUCTION

1.    I am a Special Agent ("SA") with the United States Federal Bureau of Investigation ("FBI"), and have been so employed since December 2017. I am currently assigned to a criminal squad in the Los Angeles Division field office. My training and experience included 21 weeks of training at the FBI Academy located in Quantico, Virginia. My training included training on criminal investigative techniques, bank robbery offenses, violent street gangs, violent crimes, computer based crimes, and the use of social media to obtain evidence of criminal activity. I have also discussed my investigation with more experienced FBI SAs. I also worked for approximately six and a half years as a police officer for the Los Angeles Police Department ("LAPD"). In April 2011, I completed the LAPD Academy, which lasted for six months. During my time as a LAPD officer, I conducted numerous criminal investigations including, burglary, assault with a deadly weapon, and criminal threats.

2.    I make this affidavit in support of an application for a warrant for information associated with the accounts identified as "LYRAA.XO" and "XCXALYSSAXCX" (the "SUBJECT ACCOUNTS") that are stored at premises controlled by Instagram Inc. (the "PROVIDER"), a provider of electronic communication and remote computing services, headquartered at 1 Hacker Way,

Menlo Park, CA 94025.[1]  The information to be searched is
described in Attachment A.  This affidavit is made in support of
an application for a warrant under 18 U.S.C. §§ 2703(a),
2703(b)(1)(A), 2703(c)(1)(A) and 2703(d)[2] to require the PROVIDER
to disclose to the government copies of the information
(including the content of communications) described in Section
II of Attachment B.  Upon receipt of the information described
in Section II of Attachment B, law enforcement agents and/or
individuals assisting law enforcement and acting at their

---

[1] Because this Court has jurisdiction over the offense(s)
being investigated, it may issue the warrant to compel the
PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).
See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the
disclosure by a provider . . . pursuant to a warrant issued
using the procedures described in the Federal Rules of Criminal
Procedure . . . by a court of competent jurisdiction") and 2711
("the term 'court of competent jurisdiction' includes -- (A) any
district court of the United States (including a magistrate
judge of such a court) or any United States court of appeals
that -- (i) has jurisdiction over the offense being
investigated; (ii) is in or for a district in which the provider
of a wire or electronic communication service is located or in
which the wire or electronic communications, records, or other
information are stored; or (iii) is acting on a request for
foreign assistance pursuant to section 3512 of this title").

[2] The government is seeking non-content records pursuant to
18 U.S.C. § 2703(d).  To obtain the basic subscriber
information, which does not contain content, the government
needs only a subpoena.  See 18 U.S.C. § 2703(c)(1), (c)(2).  To
obtain additional records and other information--but not
content--pertaining to subscribers of an electronic
communications service or remote computing service, the
government must comply with the dictates of section
2703(c)(1)(B), which requires the government to supply specific
and articulable facts showing that there are reasonable grounds
to believe that the records or other information sought are
relevant and material to an ongoing criminal investigation in
order to obtain an order pursuant to 18 U.S.C. § 2703(d).  The
requested warrant calls for both records containing content (see
Attachment B paragraph II.10.a.) as well as subscriber records
and other records and information that do not contain content
(see Attachment B paragraph II.10.b.).

direction will review that information to locate the items described in Section III of Attachment B.  Attachments A and B are incorporated herein by reference.

3.    As described more fully below, I respectfully submit there is probable cause to believe that the information associated with the SUBJECT ACCOUNTS constitutes evidence, contraband, fruits, or instrumentalities of criminal violations of Title 18 U.S.C. § 875(c) (Transmitting a Communication Containing a Threat to Kidnap or Injure).

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II.  STATEMENT OF PROBABLE CAUSE

5.    On April 3, 2018, a tipster (the "Tipster") submitted a tip to the FBI Public Access Line to report a threat made on social media by someone the Tipster knew as "Alyssa," who operates the SUBJECT ACCOUNTS.  The Tipster identified both "LYRAA.XO" and "XCXALYSSAXCX" as Alyssa's accounts.  The Tipster said that Alyssa made a comment on Zachary Cruz's[3] Instagram live

_____

[3] Zachary Cruz is Nikolas Cruz's brother.  Nikolas Cruz is the suspect in the Parkland, Florida school shooting that occurred on February 14, 2018.

3

stream that she was going to shoot up her school.  Proof of this message was not provided to the FBI.

6.    On or about April 4, 2018, the Tipster, without the knowledge or involvement of law enforcement, engaged in a private Instagram conversation with Alyssa at Instagram account "LYRAA.XO."  Alyssa at first denied wanting to harm anyone, however, when the Tipster told Alyssa that the Tipster had reported Alyssa to the FBI, Alyssa responded by saying "I'll shoot it up if you report."  The Tipster provided the FBI with a video screenshot of much of this conversation.

7.    Investigators contacted the PROVIDER with an emergency disclosure request and asked for the user information and Internet Protocol ("IP") access information associated with the SUBJECT ACCOUNTS.  According to the PROVIDER, the IP addresses that accessed the SUBJECT ACCOUNTS at around the times that the threatening statements were made were located in Australia.

8.    The PROVIDER also emailed investigators and disclosed more information than was requested in the emergency disclosure request believing there was an imminent threat to life, namely, messages from the SUBJECT ACCOUNTS made on March 23, 2018, April 1, 2018, and April 4, 2018.  I do not rely on the limited content already disclosed by the PROVIDER from the SUBJECT ACCOUNTS to obtain this warrant.

9.    Other than what has been described herein, to my knowledge the United States has not attempted to obtain the contents of the SUBJECT ACCOUNTS by other means.

### III. BACKGROUND ON E-MAIL AND SOCIAL MEDIA ACCOUNTS AND THE PROVIDER

10.   In my training and experience, I have learned that providers of e-mail and/or social media services offer a variety of online services to the public.  Providers, like the PROVIDER, allow subscribers to obtain accounts like the SUBJECT ACCOUNTS. Subscribers obtain an account by registering with the provider. During the registration process, providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail or social media account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  Some providers also maintain a record of changes that are made to the information provided in subscriber records, such as to any other e-mail addresses or phone numbers supplied in subscriber records.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of an account.

11.   Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as account access information, e-mail or message transaction information, and account application information. In my training and experience, such information may constitute

evidence of the crimes under investigation because the information can be used to identify the user(s) of a SUBJECT ACCOUNT.

12.   In my training and experience, e-mail and social media providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, e-mail and social media providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access a SUBJECT ACCOUNT.

13.   In my training and experience, e-mail and social media account users will sometimes communicate directly with the service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Providers of e-mails and social media services typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as

6

a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of a SUBJECT ACCOUNT.

14.  I know from my training and experience that the complete contents of an account may be important to establishing the actual user who has dominion and control of that account at a given time.  Accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider.  They may also be used by multiple people.  Given the ease with which accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account.  Only by piecing together information contained in the contents of an account may an investigator establish who the actual user of an account was.  Often those pieces will come from a time period before the account was used in the criminal activity.  Limiting the scope of the search would, in some instances, prevent the government from identifying the true user of the account and, in other instances, may not provide a defendant with sufficient information to identify other users of the account.  Therefore, the contents of a given account, including the e-mail addresses or account identifiers and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that

account.  For the purpose of searching for content demonstrating the actual user(s) of a SUBJECT ACCOUNT, I am requesting a warrant requiring the PROVIDER to turn over all information associated with a SUBJECT ACCOUNT with the date restriction included in Attachment B for review by the search team.

15.  Relatedly, the government must be allowed to determine whether other individuals had access to a SUBJECT ACCOUNT.  If the government were constrained to review only a small subsection of an account, that small subsection might give the misleading impression that only a single user had access to the account.

16.  I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or codewords (which require entire strings or series of conversations to determine their true meaning) when discussing their crimes.  They can also discuss aspects of the crime without specifically mentioning the crime involved.  In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of a message or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and parenthesis :) to convey a smile or agreement) to discuss matters.  "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an account by law enforcement personnel with information regarding the

identified criminal activity, subject to the search procedures
set forth in Attachment B, is necessary to find all relevant
evidence within the account.

17.   This application seeks a warrant to search all
responsive records and information under the control of the
PROVIDER, which is subject to the jurisdiction of this court,
regardless of where the PROVIDER has chosen to store such
information.

18.   As set forth in Attachment B, I am requesting a
warrant that permits the search team to keep the original
production from the PROVIDER, under seal, until the
investigation is completed and, if a case is brought, that case
is completed through disposition, trial, appeal, or collateral
proceeding.

a.   I make that request because I believe it might be
impossible for a provider to authenticate information taken from
a SUBJECT ACCOUNT as its business record without the original
production to examine.  Even if the provider kept an original
copy at the time of production (against which it could compare
against the results of the search at the time of trial), the
government cannot compel the provider to keep a copy for the
entire pendency of the investigation and/or case.  If the
original production is destroyed, it may be impossible for the
provider to examine a particular document found by the search
team and confirm that it was a business record of the provider
taken from a SUBJECT ACCOUNT.

9

b.    I also know from my training and experience that many accounts are purged as part of the ordinary course of business by providers.  For example, if an account is not accessed within a specified time period, it -- and its contents -- may be deleted.  As a consequence, there is a risk that the only record of the contents of an account might be the production that a provider makes to the government, for example, if a defendant is incarcerated and does not (perhaps cannot) access his or her account.  Preserving evidence, therefore, would ensure that the government can satisfy its Brady obligations and give the defendant access to evidence that might be used in his or her defense.

### 1.    Services Provided by Instagram

19.    Based on a review of information provided by Instagram regarding its services, information provided by other law enforcement officers, and/or my training and experience, I am aware of the information contained in this section of the affidavit regarding Instagram.

20.    Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com.  Instagram allows its users to create their own profile pages, which can include a short biography, or "bio," a photo of themselves, and other information.  Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

21.    Instagram permits users to post photos and videos to their profiles on Instagram and otherwise share photos and videos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo or video on Instagram, a user can add the following to the photo/video: a caption; various "tags" that can be used to search for the photo/video (e.g., a user may add the tag "#vw" so that people interested in Volkswagen vehicles can search for and find the photo/video); location information, including geotags or a location name; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos and videos. In addition, Instagram allows users to make comments on posted photos and videos, including photos and videos that the user posts or photos and videos posted by other users of Instagram. Users can also "like" photos and videos, meaning that they can express approval of a photo or video by using Instagram's "like" feature.

22.    Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

23.    Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This subscriber information may include the user's full name, e-mail addresses, and phone numbers, as well as other personal information provided directly by the user to Instagram. Once an

account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

24. Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

25. Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user.

26. Instagram allows users to post and share various types of user content in their galleries, including photos, videos, captions, comments, and other materials. Such items can contain metadata, i.e., content about the data such as the date and time the photo or video was taken. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

27. Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

28.    Users on Instagram may also search Instagram for other users or particular types of photos or other content.

29.    For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app.  Among the log file information that Instagram's servers automatically record are the particular web request, any IP address associated with the request, the type of browser used, any referring/exit web pages and associated URLs, the pages viewed, the dates and times of access, and other information.

30.    Instagram also collects other data associated with user content.  For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of certain activities, such as where a photo or video was taken, and which may include latitude and longitude information, comments on photos, and other information.  Such information can assist in plotting the location of photographs, videos, or other content posted by the user, which would be evidence of the user's location, or similar information by persons followed by or in contact with the user.

31.    As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and

13

experience, an Instagram user's account activity, IP address logs, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows users to "tag" their location in posts and allows Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner.

32. Finally, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the

owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

33.    Therefore, the computers of Instagram are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, transaction information, and other account information.

## IV.    REQUEST FOR NON-DISCLOSURE

34.    Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter an order commanding the PROVIDER not to notify any person, including the subscriber(s) of the SUBJECT ACCOUNT, of the existence of the warrant until further order of the Court, until written notice is provided by the United States Attorney's Office that nondisclosure is no longer required, or until one year from the date the PROVIDER complies with the warrant or such later date as may be set by the Court upon application for an extension by the United States.    There is reason to believe that such notification will result in: (1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; (5) otherwise seriously jeopardizing the investigation; or (6) unduly delaying trial. The current investigation set forth above is not public, and I know, based on my training and experience, that individuals who send threatening communications will often destroy digital

15

evidence and may carry out those threats before law enforcement can intervene.  In addition, if the PROVIDER or other person notifies the targets of the investigation that a warrant has been issued for a SUBJECT ACCOUNT, the unidentified suspect might further mask his/her activity and seriously jeopardize the investigation.

### V.    CONCLUSION

35.  Based on the foregoing, I request that the Court issue the requested warrant.


_____
Matthew Hutchison, Special Agent
Federal Bureau of Investigation


Subscribed to and sworn before me
on April ____, 2018.


_____
HONORABLE ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE